UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

UNITED STATES

-v-

FELIX LOPEZ-CABRERA, CARLOS LOPEZ, and
LUIS BELTRAN, et al.,

                      Defendants.

------------------------------------------------------------------X

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 6/22/2015
```

S5 11 Cr. 1032 (PAE)

OPINION & ORDER

PAUL A. ENGELMAYER, District Judge:

This decision resolves—and rejects—an application by three defendants convicted of murder in aid of racketeering for relief from the statutory mandatory minimum sentence of life imprisonment.

Between September 15, 2014 and December 3, 2014, the Court presided over the jury trial of defendants Felix Lopez-Cabrera, Carlos Lopez, and Luis Beltran. These defendants were among 76 charged in a superseding indictment with offenses arising out of their membership in or association with the Bronx Trinitarios Gang, a violent gang whose members were accused of committing, *inter alia*, more than a dozen murders and numerous acts of violence. *See* Dkt. 539. On December 3, 2014, the jury returned its verdict, finding the defendants guilty of nearly all offenses with which they were charged. *See* Dkt. 1417. Relevant here, each defendant was convicted of at least one count of murder in aid of racketeering, an offense that carries a mandatory minimum sentence of life imprisonment. *See* 18 U.S.C. § 1959(a)(1). Lopez-Cabrera was convicted of four murders in aid of racketeering; Lopez, three; and Beltran, one. Dkt. 1417.

Sentencing is upcoming. Lopez is scheduled to be sentenced on July 7, 2015, and Lopez-Cabrera and Beltran are scheduled to be sentenced on July 8, 2015.

On May 22, 2015, defendants moved for relief from § 1959(a)(1)'s mandate of a life sentence. *See* Dkt. 1698 ("Def. Br."). They argue that "*mandatory* life sentences would violate the Eighth Amendment prohibition of 'cruel and unusual punishments,'" and that a life sentence may be imposed on them only through an individualized sentencing process in which their culpability, and other factors relevant to sentencing, are taken into account in fashioning the sentence. *Id.* at 1.

Specifically, defendants seek to extend *Miller v. Alabama*, 132 S. Ct. 2455 (2012), which held that "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment," *id.* at 2464. Defendants do not qualify for relief under *Miller*, which applies only to juveniles (persons under age 18 at the time of their crimes), *id.* at 2460, because Lopez-Cabrera, Lopez, and Beltran were each between the ages of 18 and 22 when they committed or participated in the murders at issue. However, they argue that the factors that led the Supreme Court to rule as it did in *Miller* also apply to them because, like juveniles, persons between ages 18 and 22 are "well within a period of time of great change in the parts of the brain associated with risk assessment, impulse control, and emotional regulation," and the "capriciousness and diminished capacity of youth" render them less morally culpable than a fully mature adult. Def. Br. 1–2.

On June 12, 2015, the Government filed a brief in opposition to defendants' motion. Dkt. 1714 ("Gov. Br."). The Government argues there that "*Miller* draws a line at the age of 18, and thus does not overrule established precedent upholding the constitutionality of mandatory minimum sentences of life for individuals 18 and above." *Id.* at 2.

The Government correctly reads the case law. *Miller* unambiguously applies only to juveniles, as the Court's holding was that "mandatory life-without-parole sentences for juveniles violate the Eighth Amendment," 132 S. Ct. at 2464, and its analysis repeatedly referred either to

2

juveniles or to children, *see, e.g., id.* ("[C]hildren are constitutionally different from adults for purposes of sentencing."); *id.* at 2470 ("[C]hildren are different."); *id.* at 2475 ("[A] judge or jury must have the opportunity to consider mitigating circumstances before imposing the harshest possible penalty for juveniles."). And in the line of cases upon which *Miller* drew, the Supreme Court consistently has drawn the line at age 18 in announcing Eighth Amendment limitations on sentencing based on the defendant's age. Most notably, in *Roper v. Simmons*, 543 U.S. 574 (2005), the Court held that "[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed." *Id.* at 578. Explaining that line, the Court stated:

> Drawing the line at 18 years of age is subject, of course, to the objections always raised against categorical rules. The qualities that distinguish juveniles from adults do not disappear when an individual turns 18. By the same token, some under 18 have already attained a level of maturity some adults will never reach. . . . [H]owever, a line must be drawn. . . . The age of 18 is the point where society draws the line for many purposes between childhood and adulthood. It is, we conclude, the age at which the line for death eligibility ought to rest.

*Id.* at 574. Similarly, in *Graham v. Florida*, 560 U.S. 48 (2010), the Court held that "for a juvenile offender who did not commit homicide the Eighth Amendment forbids the sentence of life without parole." *Id.* at 74. The Court again set a bright line at age 18: While acknowledging that "[c]ategorical rules tend to be imperfect," *id.* at 75, it noted that "[t]he age of 18 is the point where society draws the line for many purposes between childhood and adulthood," *id.* at 74 (quoting *Roper*, 543 U.S. at 574).

Further, the factor on which defendants rely in arguing for a constitutional requirement of individualized sentencing for defendants 18 or older—the "fundamental differences between juvenile and adult minds"—is only one of several that the Supreme Court has considered in distinguishing between juveniles and adults under the Eighth Amendment. The Court has also

3

observed that: (a) children under 18 "have limited 'contro[l] over their own environment' and lack the ability to extricate themselves from horrific, crime-producing settings," *Miller*, 132 S. Ct. at 2464 (quoting *Roper*, 543 U.S. at 569) (alteration in original); (b) "a child's character is not as 'well formed' as an adult's; his traits are 'less fixed' and his actions less likely to be 'evidence of irretrievabl[e] deprav[ity],'" *id.* (quoting *Roper*, 543 U.S. at 570) (alterations in original); *see also Graham*, 560 U.S. at 68; and (c) juveniles are "less likely than adults to work effectively with their lawyers to aid in their defense" because they "mistrust adults and have limited understandings of the criminal justice system and the roles of the institutional actors within it," *Graham*, 560 U.S. at 78. Of course, these traits and situational factors, too, abate at different ages for different people. But it is reasonable to infer that, in the main, these factors are significantly less present for defendants between ages 18 and 22 than for those between ages 14 and 18.

Significantly, every federal court of appeals to consider the issue has held that *Roper*, *Graham*, and *Miller* apply only to defendants who were younger than 18 at the time of their crimes. *See In re Garcia*, No. 13-2968, 2013 U.S. App. LEXIS 26139, at *1 (3d Cir. Aug. 21, 2013) ("Petitioner's reliance [on *Miller*] is misplaced because he was not under the age of 18 when he committed his crime."); *United States v. Dock*, 541 F. App'x 242, 245 (4th Cir. 2013) (per curiam) (Because Junior was older than 18 at the relevant time, "*Miller* is of no help to Junior."); *Doyle v. Stephens*, 535 F. App'x 391, 395 (5th Cir. 2013) (unpublished opinion) ("Doyle was over eighteen, so he cannot use [*Roper*] as a shield."); *United States v. Marshall*, 736 F.3d 492, 500 (6th Cir. 2013) ("Marshall is at the very most an immature adult. An immature adult is not a juvenile. . . . Because Marshall is not a juvenile, he does not qualify for the Eighth Amendment protections accorded to juveniles."); *Melton v. Fla. Dep't of Corr.*, 778

4

F.3d 1234, 1235, 1237 (11th Cir. 2015) ("*Roper* prohibits only the imposition of the death penalty on a defendant who committed the capital crime when he was younger than 18 years old," whereas "Melton was 18 years, 25 days old when he committed the crime.").

The Sixth Circuit's reasoning in *Marshall* is instructive. Marshall qualified as an adult because he had committed his crime (receiving child pornography) between ages 18 and 20. 736 F.3d at 494. He faced a mandatory minimum sentence of five years imprisonment. *Id.* At sentencing, Marshall's counsel submitted evidence that Marshall had "a rare physiological condition called Human Growth Hormone Deficiency"; a clinical psychologist testified that Marshall had "a mental age of 15½" and that "in all ways other than chronological age, [he] was still a juvenile at the time of his arrest." 736 F.3d at 495–96. The psychologist also attested that "the adolescence period does not end at 18 but actually extends into an individual's mid-20s." *Id.* at 496. The district court, however, imposed the mandatory minimum sentence, and the Sixth Circuit affirmed. It rejected Marshall's arguments—both general and defendant-specific—for overcoming the mandatory minimum on the basis of the factors considered in *Roper*, *Graham*, and *Miller*. Those cases, the Sixth Circuit noted, "all presuppose that a juvenile is an individual with a chronological age under 18." *Id.* at 498. In the U.S. legal system, the Sixth Circuit reasoned, "the only type of 'age' that matters is chronological age," and so "[t]he reasons for according special protections to offenders under 18 cannot be used to extend the same protection to offenders over 18." *Id.*

This Court agrees. The Supreme Court's decisions in *Roper*, *Graham*, and *Miller* draw a bright line at age 18. As *Roper* recognized, that line, like all categorical rules, may prove over- and/or under-inclusive, but a bright line at some age is necessary. 543 U.S. at 574. Otherwise, no mandatory minimum sentence could ever apply in practice: A defendant, far older than 18,

could effectively obtain an individualized inquiry by arguing that due attention to factors particular to himself—including his maturity, brain development, character, and control over his environment—would demonstrate that imposition of a mandatory minimum sentence is, in his case, unjust. Whatever the merits of such a sentencing regime might be as a matter of policy, the precedents in *Roper*, *Graham*, and *Miller* give this Court no charter to impose it, or to raise above age 18 the chronologic line drawn in those cases.

Accordingly, this Court cannot, and does not, extend *Miller* to the defendants in this case. Defendants have preserved their claim that *Miller*'s requirement for individualized sentencings for juveniles should be extended to defendants up to age 22. They are at liberty to make this claim on appeal, and to bring the voluminous scientific evidence that they have marshaled to the attention of the Second Circuit and the Supreme Court.

Finally, the Court notes that "the Eighth Amendment contains a 'narrow proportionality principle' that 'does not require strict proportionality between crime and sentence' but rather 'forbids only extreme sentences that are grossly disproportionate to the crime.'" *Graham*, 560 U.S. at 60 (quoting *Harmelin v. Michigan*, 501 U.S. 957, 997, 1000–01 (1991) (Kennedy, J., concurring)). To the extent that the defendants may be read—in addition to raising a claim based on *Miller*—to invoke that Eighth Amendment principle, it does not avail them here. Each defendant was convicted of at least one count of murder in aid of racketeering. And the evidence convincingly showed, as the jury found, that (1) Lopez-Cabrera shot two people as they fled down a street and participated in two other murders, one of a rival gang member and another of a civilian who refused to hand over his cell phone to a gang member; (2) Lopez participated in the murders of three people, including the double homicide committed by his brother, Lopez-Cabrera, and another of a perceived gang rival cowering in the lobby of an apartment building;

and (3) Beltran stalked and shot a rival gang member in cold blood outside a Chinese restaurant. The evidence further showed that these were only some of the violent acts in which the three defendants participated. Given these facts and the overall evidence at trial, the Court firmly rejects the notion that a sentence of life imprisonment would be "grossly disproportionate" to the crimes that each defendant committed. Because "a sentence which is not otherwise cruel and unusual" does not "become[] so simply because it is 'mandatory,'" the Court has no basis to find that the mandatory life sentences applicable here are unconstitutional. *Harmelin*, 501 U.S. at 995 (majority opinion).

For these reasons, defendants' motion is denied. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 1698.

SO ORDERED.

_____
Paul A. Engelmayer
United States District Judge

Dated: June 23, 2015
       New York, New York